UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| VLADIMIR KRUGLYAK d/b/a INTELLIGENT TRANSPORTATION,<br><br>Plaintiff,<br><br>v.<br><br>UNLIMITED CARRIER, INC., DOT #1701017 d/b/a TRANS QUALITY, INC. DOT #2046869, et al.,<br><br>Defendants. | ) | 2:25-CV-00171-DCLC-CRW |

**MEMORANDUM OPINION AND ORDER**

Proceeding pro se, Plaintiff brings several claims against Defendants following the termination of his independent contractor agreements. Defendants Unlimited Carrier, Inc. and ZS Express, Inc. (together, "the corporate Defendants") moved to dismiss these claims with prejudice under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) [Doc. 17], to which Plaintiff responded in opposition [Doc. 21], and Defendants replied [Doc. 22]. For the following reasons, the Court lacks personal jurisdiction over the corporate Defendants, and the motion is GRANTED. Because Plaintiff filed this action to escape an adverse ruling in a pending state case, the dismissal is with prejudice.

## I. BACKGROUND

Plaintiff is a semi-truck driver who operates a sole proprietorship under the name Intelligent Transportation. [Doc. 1, ¶ 7]. In July 2020, he responded to Defendants' online advertisements seeking independent contractors to work as drivers and entered into an Owner/Operator Agreement with Defendant Unlimited Carrier (doing business as Trans Quality Inc.). [*Id.* at ¶ 11]. On August 28, 2020, Intelligent Transportation entered into a Vehicle Use

Agreement with Defendant ZS Express to lease a vehicle for Plaintiff's trucking work with Unlimited Carrier. [*Id.*]. These agreements were terminated on March 5, 2021, and Plaintiff was instructed to return the leased vehicle to the nearest terminal. [Doc. 1-15]. After he failed to do so, it was repossessed on March 7, 2021. [Doc. 1, ¶ 15].

Plaintiff alleges that throughout the course of their business together, Defendants made false representations and engaged in wrongful conduct related to rate confirmations, load assignments, revenue payments, the nature of the independent contractor relationship, and equipment repossession. Plaintiff now brings claims against Unlimited Carrier, ZS Express, Inc., and five of their employees for breach of contract, violation of the Truth-in-Leasing regulations, fraud, fraudulent inducement, civil conspiracy, conversion, intentional infliction of emotional distress, violation of the Tennessee Consumer Protection Act, tortious interference with business relationships, unreasonable restraint of trade, RICO, and RICO conspiracy.

On March 19, 2025, Plaintiff raised these same, or largely similar, claims based on the same set of facts in the Circuit Court of the Twelfth Judicial Circuit of Will County, Illinois.[1] [Doc. 18-2]. On August 4, 2025, that court dismissed Plaintiff's claims for lack of standing [Doc. 18-3]. Plaintiff then filed an Amended Complaint, and, while his Amended Complaint was still pending, filed the instant lawsuit in this Court. The Illinois court dismissed his Amended Complaint on December 3, 2025, in a ruling on the merits. [Doc. 18-4].

Here, in lieu of an answer, the corporate Defendants filed a motion to dismiss with prejudice, arguing that this Court lacks personal jurisdiction over them, the claims are barred by res judicata, Plaintiff has failed to state a claim, and that Plaintiff has engaged in forum shopping.

---

[1] The Court takes judicial notice of these proceedings. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980), *cert. denied,* 449 U.S. 996 (1980) ("[A] federal court may take judicial notice of the proceedings in other courts of record.").

Additionally, Defendants argue that Plaintiff lacks standing to bring many of his claims, as they belong to Intelligent Transportation alone. None of the individual Defendants have entered an appearance in this case or otherwise responded to the Complaint.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move for dismissal due to lack of personal jurisdiction. These motions involve burden shifting. *Malone v. Stanley Black & Decker*, *Inc*., 965 F.3d 499, 504 (6th Cir. 2020). First, the plaintiff must "make a prima facie case [that jurisdiction exists], which can be done merely through the complaint." *Id.* (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). "The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence." *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)). "Once the defendant has met the burden, it returns to the plaintiff, who may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id.* (quoting *Theunissen*, 935 F.2d at 1459).

Once the Court is properly presented with a Rule 12(b)(2) motion to dismiss, "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458. Where a court relies on written submissions alone, the plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

A plaintiff meets its burden of making a prima facie showing of jurisdiction by "establishing with reasonable particularity sufficient contacts" between the defendant seeking dismissal and the forum state. *Id.* (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,

819 F.2d 434, 437 (3d Cir. 1987)); *see also Malone*, 965 F.3d at 504 (applying same standard). "Under these circumstances, [a] court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff and will construe the facts in the light most favorable to the nonmoving party." *Neogen*, 282 F.3d at 887 (internal citation omitted).

Pro se plaintiffs "enjoy the benefit of a liberal construction of their pleadings and filings." *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). However, pro se litigants must comply with basic pleading standards, and courts are not required to develop pleadings on their behalf. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

## III. ANALYSIS

### A. Meet and Confer Requirement

As an initial matter, Plaintiff contends that Defendants failed to satisfy the Court's meet and confer requirement prior to filing the motion to dismiss. But Defendants did meet and confer with Plaintiff via email prior to filing their motion. [Doc. 22-1, pg. 5]. In these communications, Defendants informed Plaintiff that they found the instant lawsuit "duplicative" in light of the Illinois lawsuit. [*Id.*]. Defendants disclosed the basis of their motion to Plaintiff and Plaintiff elected not to address it. Under the Court's Order Governing Motions to Dismiss [Doc. 3], Plaintiff was not entitled to anything further prior to Defendants' filing of their motion to dismiss. As there are no procedural deficiencies with Defendants' motion, the Court will now address the motion.

### B. Personal Jurisdiction

"The court's exercise of personal jurisdiction must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Because Tennessee's long-arm statute authorizes courts to exercise jurisdiction "[o]n any basis not inconsistent with the

constitution ... of the United States," Tenn. Code Ann. § 20-2-225(2), the Court only needs to determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998).

Personal jurisdiction can be either general or specific, "depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). Here, because Plaintiff contends that this Court has both general and specific jurisdiction over Defendants, the Court will analyze both possibilities.

General jurisdiction is proper only where "a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989) (internal quotation marks omitted). A corporation is subject to general jurisdiction in both its place of incorporation and principal place of business. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). The two corporate Defendants are both incorporated and have a principal place of business in Illinois.[2] [*See* Doc. 1 at ¶ 8; Doc. 18-1 at ¶¶ 4-5]. Plaintiff does not argue otherwise. Therefore, Plaintiff has not shown that this Court has general jurisdiction over the corporate Defendants.

Specific jurisdiction concerns a defendant's specific contacts with the forum state relating to the claims at issue. The Court looks to the Defendants' contacts with Tennessee that relate to Plaintiff's claims. The Sixth Circuit has set forth a three-prong test to determine whether a court holds specific jurisdiction over a defendant:

---

[2] Defendant ZS Express ceased operations in 2022 and is in the process of being dissolved. [Doc. 18-1 at ¶ 5].

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549–50 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007)). The first prong—purposeful availment—is the "*sine qua non* for in personam jurisdiction" and is "arguably the most important" factor. *Air Prods.*, 503 F.3d at 550.

The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). Jurisdiction will be proper, however, where the contacts "proximately result" from the defendant's own actions that create a "substantial connection" with the forum State. *Id*. When a defendant has created "continuing obligations" between itself and the forum state's residents, it has availed itself of the privilege of conducting business there and thus jurisdiction is proper. *Id.* at 476.

The facts of this case do not satisfy the purposeful availment requirement. Plaintiff argues that he was "recruited" while he was in Tennessee, that he received and executed the Agreements in Tennessee, that he performed administrative duties in Tennessee, and that he received payments and communications from Defendants all while he was present in Tennessee. [Doc. 21, pgs. 6-7]. None of these actions, however, demonstrate that Defendants' actions were "akin to a deliberate undertaking" to create a substantial connection to Tennessee. *See Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003).

First, Plaintiff was not personally recruited by Defendants but instead responded to their generic online advertisement that appears to have been posted on Facebook. [Doc. 1, ¶ 11; Doc. 1, Ex. A]. While advertising activities can rise to the level of purposeful availment in some circumstances, *Bridgeport Music, Inc.*, 327 F.3d at 472, "[a]dvertising in national publications or on Facebook and Twitter … is not sufficient to support a finding of purposeful availment." *Brown v. Twentieth Century Fox Home Ent.*, No. 6:14-CV-147-KKC, 2015 WL 5081125, at *7 (E.D. Ky. Aug. 27, 2015) (citing *See, Inc. v. Imago Eyewear Pty, Ltd.,* 167 F. App'x 518, 522 (6th Cir. 2006)). By advertising nationwide online, Defendants are "no more benefitting from the laws of [the forum state] than from the laws of any other state." *Neogen*, 282 F.3d at 890; *see Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 812 (E.D. Mich. 2000) ("The Court is not satisfied that the mere placement of advertisements in nationally distributed on-line and print publications 'rise[s] to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser.'"). Plaintiff does not argue that the advertisements were solely placed in Tennessee or expressly targeted residents of Tennessee, and the advertisement itself does not refer to Tennessee. Therefore, Defendants' use of a nationwide online advertisement that a Tennessee resident happened to respond to does not demonstrate purposeful availment in Tennessee.

Next, Plaintiff's receipt and signing of the Agreements and Defendants' communications to him while he was physically present in Tennessee do not rise to the level of purposeful availment. In *Air Prods.*, the Sixth Circuit held that "entering into a contract with an out-of-state party *alone* does not automatically establish sufficient minimum contacts," but the presence of certain additional factors may constitute purposeful availment. 503 F.3d at 551 (citing *Burger King*, 471 U.S. at 478-79); *see Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000)

(“the mere existence of a contract between [a defendant] and [a plaintiff] for seventeen months is insufficient to confer personal jurisdiction over [the foreign party].”). The additional factors courts may consider are the parties’ “prior negotiations and contemplated future consequences, along with the terms of the contract and the parties’ actual course of dealing.” *Air Prods.*, 503 F.3d at 551 (citing *Burger King*, 471 U.S. at 478-79). Moreover, the *“quality* rather than the *quantity* of the contacts” should be the focus in determining purposeful availment. *Calphalon,* 228 F.3d at 721.

In *Calphalon,* an Ohio corporation sued a Minnesota resident in Ohio to resolve a contract dispute. *Id.* at 720. During the course of their relationship, the defendant communicated with Calphalon in Ohio via email, fax, and telephone. *Id.* at 720–21. The district court granted the defendant’s motion to dismiss for lack of personal jurisdiction, finding his contacts with Ohio too fortuitous and attenuated. *Id.* at 722. The Sixth Circuit affirmed the district court’s decision, finding that the defendant’s communications and physical visits to Ohio were “solely because Calphalon chose to be headquartered in Ohio, not because [the defendant] sought to further its business and create ‘continuous and substantial’ consequences there.” *Id.* at 723.

This case presents a similar set of circumstances. Defendants do not have any offices, employees, bank accounts, or yards in Tennessee. They claim that any loads originating in Tennessee are “rare and incidental,” and that they do not solicit freight contacts from Tennessee shippers. [Doc. 18, pg. 7]. Plaintiff did not dispute Defendants’ declaration. Though Plaintiff was physically present in Tennessee when he signed the Agreements and performed administrative duties for Defendants, as far as Defendants were concerned, he could have done these tasks from anywhere. The same is true for any communications Defendants sent to Plaintiff: he could have been located anywhere and Defendants would have contacted him all the same. Further, Plaintiff

does not produce any facts or evidence that connects the subject matter or performance of the Agreements to Tennessee. *See Kerry Steel, Inc. v. Paragon Indus.* , 106 F.3d 147, 151 (6th Cir. 1997) (finding that an out-of-state defendant did not purposefully avail itself of the benefits and protections of the forum state because, in part, no facts connected the subject matter or performance of the contract to the forum state). Defendants' contacts with Tennessee were too fortuitous and attenuated—and based on Plaintiff's own actions—to constitute purposeful availment.

Any payments Defendants submitted to Plaintiff in Tennessee do not change this analysis. Plaintiff does not present any specific facts about where payments were sent, but assuming the Defendants sent his compensation payments to his bank account or home address, these payments into Tennessee would have occurred at Plaintiff's own direction. "The choice to send [payments] to Tennessee was for the plaintiff's convenience, not for the purpose of permitting [the defendant] to avail itself of the privilege of conducting business in Tennessee." *Moore v. Shanahan Eng'g, Inc.*, No. 3:20-CV-00021, 2020 WL 5039443, at *5 (M.D. Tenn. Aug. 25, 2020) (noting that courts "generally agree" that payments made by an out-of-state defendant to the forum state do not constitute purposeful availment); *see also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]he combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

Finally, that the corporate Defendants have a registered agent in Tennessee for service of process does not support a finding of personal jurisdiction. As Defendants note, they maintain a

registered agent in Tennessee due to a federal requirement that national freight carriers have designated agents in every state in which they operate. *See* 49 U.S.C. § 13304(a). The Sixth Circuit has expressly held that the "mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).

Based on the above, Plaintiff has not shown that a "substantial connection" with Tennessee was created from actions "by the defendant[s] [themselves]." *Burger King*, 471 U.S. at 475. His allegations are too general and largely contemplate his own actions and presence in Tennessee rather than Defendants' actions directed at Tennessee. Consequently, Defendants' contacts with Tennessee do not satisfy the constitutional due process requirement for this Court to exercise personal jurisdiction over them. Because the Court lacks personal jurisdiction over the corporate Defendants, all claims against them must be dismissed.

**C. Dismissal With Prejudice**

Dismissals of cases that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice. *See* Fed.R.Civ.P. 41(b); *Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001). Still, "[i]n rare circumstances, a district court may use its inherent power to dismiss with prejudice (as a sanction for misconduct) even a case over which it lacks jurisdiction." *Id.* (quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1091 (D.C. Cir. 1998)).

Plaintiff engaged in forum shopping in this case, as the proceedings in the Circuit Court of the Twelfth Judicial Circuit of Will County, Illinois demonstrate. After his Illinois case was initially dismissed for lack of standing, Plaintiff submitted an Amended Complaint that did little to address the issues with his original Complaint. While the Amended Complaint was pending

(and when Plaintiff was on the cusp of losing on the merits), Plaintiff filed the instant case in federal court. At a later hearing before the court in the Illinois case, Plaintiff moved to voluntarily withdraw his Amended Complaint "to let this case be prosecuted in the federal forum." [Doc. 22-2 at 9:5, 11:1-2 ("[the federal court in Tennessee] just accept[s] my pleadings, and they schedule a discovery.")]. This is forum shopping. *See, e.g., McDermott v. Toyota Motor Sales Co.*, 487 F. Supp. 484, 486 (E.D. Tenn. 1980) (finding the plaintiff engaged in forum shopping after filing suit in federal court after recognizing that his state court case would likely be dismissed). Due to the misconduct present in this case, dismissal with prejudice is warranted here.

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss [Doc. 17] is **GRANTED** and the claims against them are **DISMISSED WITH PREJUDICE**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge